## EDWARD DYRCZ v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Division One, November 29, 1911.

1. **NEGLIGENCE: Unconstitutional Ordinances: Not in the Case.** Where plaintiff alleged defendant was guilty of negligence in running the train in violation of certain city ordinances regulating speed and requiring the bell of the train to be rung, but did not put his case to the jury on either of those specifications of negligence, but stood on another ground alleged, namely, that defendant's servants failed to exercise ordinary care to stop the train after they saw his peril, defendant's defense that the ordinances are unconstitutional and void, although pleaded, is not in the case, and will not be considered on appeal.

2. **————: Pedestrain on Railroad Track: Known User: Humanitarian Rule.** In the absence of a known user in the public of the railroad track of such sort as would cast the duty on the railroad defendant to look out for persons at the point of injury, then, in order to hold defendant liable under the humanitarian doctrine for the injury to plaintiff due to his being struck by a train while he was walking on the track, it is necessary for plaintiff to show that he was actually seen by defendant's train servants on the track, between the point at which he entered it and the place of injury, in time to have warned him and averted his injury by the use of ordinary care.

238 Sup.—3

3. ——: ——: ——: **Crossing Track.** A pedestrian who, in daylight, attempts to cross a much-used and unobstructed track immediately in front of an on-coming train, without looking or listening, and is struck by it, cannot recover, whether or not the place at which he attempted to cross had for a long time been customarily used by the public as a foot-path.

4. ——: **Crossing Track: Looking and Listening.** A pedestrian in the act of crossing, in daylight, a much-used and unobstructed railroad track—which is itself a sign of danger—is chargeable with negligence unless he looks and listens for approaching trains before entering upon the track.

5. ——: ——: **Evidence: Humanitarian Rule.** Where plaintiff testified that he was in the act of crossing the track at the time the train struck him, and had not walked on the track at all, and all the other witnesses were in such a position that they could not see where he entered upon the track or whether or not he atempted to walk upon it in front of the on-coming train, there is no room in the case for the humanitarian rule.

Appeal from Buchanan Circuit Court.—*Hon. C. A. Mosman,* Judge.

REVERSED.

*Robert T. Railey* and *Ben J. Woodson* for appellant.

The demurrer of defendant offered to the evidence should have been sustained for the reasons, viz.: First. Because the plaintiff, a trespasser, stepped in front of the train without first looking or listening for it. Second. Because plaintiff was warned by the sounding of the whistle in ample time to have gotten off the track, and his negligence in not doing so prevents his recovery in this case. If plaintiff had knowledge of the approaching train, or if by the exercise of ordi-

nary care he could have known that fact, then he cannot recover, even though the bell was not rung or the whistle sounded.  Harlan v. Railroad, 64 Mo. 480. The law as declared in the Harlan case, supra, has been enunciated by this court many times.  Taylor v. Railroad, 86 Mo. 462; Purl v. Railroad, 72 Mo. 168; Hallihan v. Railroad, 71 Mo. 113; Kelley v. Railroad, 75 Mo. 141; Yance v. Railroad, 93 Mo. 437; Hanlon v. Railroad, 104 Mo. 388; Baker v. Railroad, 122 Mo. 573; Lane v. Railroad, 132 Mo. 27; Payne v. Railroad, 136 Mo. 576; Schmidt v. Railroad, 191 Mo. 228.

*Allen, Gabbert & Mitchell* for respondent.

(1)  Plaintiff was not a trespasser.  Plaintiff and a large number of others had for a long time been accustomed to use the track as a footpath.  LeMay v. Railroad, 105 Mo. 370; Lynch v. Railroad, 111 Mo. 601; Guenther v. Railroad, 108 Mo. 18; Murrell v. Railroad, 105 Mo. App. 88.  Even though notices may have been posted to warn people of danger and to keep them off the track, such notices are of no avail to the defendant where there has been a long and continued disregard thereof by the public.  Such are the facts in this case.  Fearons v. Railroad, 180 Mo. 208.  (2) This case was submitted to the jury solely on the humanitarian doctrine.  There was ample evidence to support the verdict.  The track was straight for more than a mile on either side of the place where plaintiff was struck.  The train crew had no right to expect a clear track.  The track was constantly used by pedestrians, and had been for years.  Eppstein v. Railroad, 197 Mo. 720; Fiedler v. Railroad, 107 Mo. 645; Fearons v. Railroad, 180 Mo. 228; Morgan v. Railroad, 159 Mo. 262; Scullin v. Railroad, 184 Mo. 695; Murphy v. Railroad, 228 Mo. 76; Ahnefeld v. Railroad, 212 Mo. 280; Cotner v. Railroad, 220 Mo. 306; Everett v. Railroad, 214 Mo. 54; Frye v. Railroad, 200 Mo.

400; Klockenbrink v. Railroad, 172 Mo. 678. There was substantial evidence to support the verdict of the jury. The verdict therefore is conclusive on the defendant and should not be disturbed on appeal. Morgan v. Keller, 194 Mo. 663; Levels v. Railroad, 196 Mo. 606; Stumpe v. Kopp, 201 Mo. 412; Wayland v. Johnson, 130 Mo. App. 80; Wood v. Railroad, 119 Mo. App. 78; LeMay v. Railroad, 105 Mo. 365. Where there is evidence to support the verdict which is approved by the trial court, the judgment will not be reversed. though the appellate court may believe the finding of the jury is against the weight of the evidence. Nephler v. Woodward, 200 Mo. 179; Knapp v. St. Louis Trust Co., 199 Mo. 640; Colyer v. Railroad, 113 Mo. App. 457; McNulty v. Railroad, 203 Mo. 475. Besides, defendant saw fit to stand on its demurrer to the evidence, thereby admitting plaintiff's evidence to be true. (3) Plaintiff's injuries are permanent—the verdict is small. The judgment is clearly for the right party, and should be affirmed. Woody v. Railroad, 104 Mo. App. 678; Peterson v. Railroad, 199 Mo. 331.

LAMM, J.—Negligence. Plaintiff had a judgment for $1500 in the Buchanan Circuit Court. Defendant appeals, raising (among others) constitutional questions.

The gist of the complaint is that while plaintiff was on one of defendant's tracks in South St. Joseph on his way home on the afternoon of September 23, 1907, at a point where said track was customarily used by many persons going to and returning from certain packing houses, and which customary use was known to defendant, its agents and servants in charge of its certain freight train, he was run down from behind by the engine pulling said train and grievously hurt, viz., the bones of his right leg were broken and he was otherwise bruised and wounded and thereby per-

manently disabled.  That his injuries were caused by the negligence of defendant's said servants and employees as follows: (1) in that the train was negligently run at thirty miles per hour in violation of a certain ordinance of St. Joseph limiting the speed of trains within the city to five miles per hour (which ordinance was pleaded); in that (2) said servants and employees failed to sound the bell on said engine to warn plaintiff of the approach thereof, which failure was in violation of another ordinance of said city (also pleaded); and in that (3) defendant's said agents and servants saw, or by exercise of reasonable care and diligence could have seen, plaintiff in peril on the track in time to have averted his injuries, and negligently failed to warn him by bell, whistle or other signal and negligently failed to stop said train, etc.  The petition charged furthermore that plaintiff was in the exercise or due care in looking and listening and at sundry times turned around to see that no train was coming from behind and was unaware of the approach of the train until it was too late for him to get out of the way.

Defendant answered by denying its own negligence and pleading the contributory negligence of plaintiff, not only at the time of his injury, but since that time in aggravating his injuries by his subsequent carelessness.  It is next alleged that the bell and speed ordinances pleaded are unreasonable, unconstitutional, null and void for reasons set forth.

The reply was conventional.

The record shows that plaintiff did not put his case to the jury on his first two specifications of negligence.  He stood on the last, seeking recovery solely on the theory that defendant's servants either saw him in peril, or should have seen him in time to save him by using ordinary care.  In this condition of things the elaborate brief of defendant's counsel on the un-

Dyrcz v. Railroad.

reasonableness and unconstitutionality of the two or-
dinances pleaded is waste labor for the purposes of
determining germane and live assignments of error.
Accordingly we put those questions away from us.

Defendant introduced no testimony. At the close
of its adversary's case it offered an instruction in the
nature of a demurrer to the testimony. Saving an
exception to the refusal of that instruction, it now
presses the point as decisive of the case.

In our opinion that assignment of error is well
made, because:

Attending to the facts, there follows a crude free-
hand drawing compiled from an elaborate map intro-
duced by plaintiff and produced here for our inspec-
tion. The sketch is not drawn to a scale, but will as-
sist in describing the *locus in quo* and throwing light
on the facts, viz.:

The scene is laid in South St. Joseph. BA is a segment of Michigan street running practically east and west. Its western terminus is at B. From that point it extends east, cutting Lake avenue at right angles. Let ED represent a segment of Ohio street. It runs parallel with Michigan and four hundred feet to the south. Let DA represent a north and south street, Lake avenue, it being a main thoroughfare in that vicinity. The area bounded by Michigan and Ohio streets and lying west of Lake is mostly vacant property and we will call it the ''block.'' North of Michigan are horse and mule barns. South of Ohio are vacant lots. Southeast of the block and some distance away is a settlement called in the record, with a touch of humorous sarcasm, ''Skeeterville.'' Plaintiff lived southeast of the block on Kentucky street, some two or three blocks away. West of the block is no street. Here there are a group of railroad tracks running north and south, one of them is represented by the line REBS; another, by the line TXY; and still others west of these are not shown on the diagram. On the map put in evidence the line REBS is green and the witnesses call it the green track. This green track belongs to the Rock Island and on it (under some running arrangement) Santa Fe and Missouri Pacific trains come into and leave St. Joseph to the south. About eleven hundred feet north of B there was a depot, not shown on the diagram. The railroad shown by the line TXY belongs to the C. B. & Q., as did the other tracks and switch tracks west. These railroad tracks and intervening strips of land constitute practically a railroad yard of considerable width. West of them and extending on north were divers packing house establishments and grounds. The C. B. & Q. track shown on the diagram is fourteen feet west of the green track. There were access to and egress from these packing house plants over open streets for the accommodation of residents southeast by their coming

to Lake, going north to Illinois avenue (an east-and-west street not shown on the diagram) and then going west and getting into the packing house grounds through other streets not shown on the diagram. But that was a round-about way. The ways generally used were by the paths shown by the dotted lines on the diagram. One of these paths ran up the *cul de sac,* AB, and on west on the line of Michigan street if it were projected west. Another ran up the *cul de sac,* DE, and on west across the tracks in the line of Ohio street if it had been projected west. Another commenced at D and ran diagonally across the block to B. This was a broad and much used path and the main one. When travel reached the point B going west, on the line BXC across the tracks, it took that line. There are other paths in the vicinity, but they are immaterial here. Plaintiff is an Austrian Pole, twenty-eight years old, and at the time in hand was employed by the Swift Packing Company, whose plant was northwest of the *locus in quo.* He testified through an interpreter. On the day in question, at 5:30 p. m., he left Swift's and went to the Hammond packing plant, due west of Michigan street, where he had formerly been employed, and from that point he undertook to go to his home, aiming towards the point B at the head of Michigan street. Somewhere on his journey and while among the railroad tracks he picked up a short tie for fuel. With that tie on his shoulder he crossed the C. B. & Q. track shown on the diagram at about X. At that time on that track there was a string of cars extending north from X to the depot north of X. There was also a string of a half dozen dead freight cars south of X. At X there was a decided break in the string of cars of six or seven feet, and plaintiff apparently crossed the C. B. & Q. track through this break or gap. When he reached B, instead of going down Michigan street to A, or instead of traveling on the well-beaten diagonal path from B to D, it is claimed

he wheeled to his right and took down the green rail-road track intending apparently to go to E and thence down Ohio street to D. There is no doubt under the testimony but that at the point B, where the diagonal path joins the east-and-west path at the head of Michi-gan street, there was such continued and pronounced user shown by the public that defendant had a call to look out for pedestrians there. It had no right to expect a clear track at that point. But plaintiff was not hurt at that point. A Missouri Pacific train of fifteen freight cars, southbound on the green track and going rapidly, struck him a hundred or one hundred and seventy-five feet south of that point between B and E and broke his leg. Between these two points the green track is rough, the ties were about twenty inches apart, the space between them was ballasted with cinders and broken vitrified brickbats and this ballasting was not flush with the top of the ties. The record shows it was not an inviting place to walk and not the usual route for footmen. If there was any path on that track, it was dim. Some of plaintiff's evidence was to the effect that but few persons pass along there. There was some other evidence that a good many people passed along there. At B and west of B there was a group of conspicuous danger signs on posts notifying the public it was private property, that there was no passway there and that there was danger. There was some little testimony that the em-ployees of the packing plants swarmed all over the grounds in going and coming "like a flock of birds," but, as said, the physical signs on the surface of the earth indicated that the lines of travel were in the dotted paths shown on the diagram, and there was little or no sign that the green track from B to E was used as a footpath to any such great extent as would give defendant notice that persons were to be expected there.

Absent a known user in the public of the green track of such sort as would cast the duty on the defendant to look out for persons, then, in order to hold defendant under the humanitarian doctrine, it was necessary for plaintiff to show that he was actually seen by defendant's train servants on the green track between B and E in time to have warned him and averted his injury by the use of ordinary care. Now, there is no testimony tending to show that plaintiff was actually seen in peril in time to have averted his injury by the use of ordinary care. So, if he recover at all he must recover on the theory the point where he was struck was a place that defendant should have anticipated the presence of people, whereby a duty was raised to look out for them. Plaintiff's counsel plant their case on the theory that plaintiff came to B in his journey and then turned his back, as said, to the north and walked south between the rails on the green track for one hundred or one hundred and seventy-five feet and was struck at a place where the train crew owed a duty to look out for persons in peril. The testimony shows the track was level and unobstructed for a great distance, hence if the duty to look for plaintiff was present then the ability to see him was also present during all the time he was walking that distance (if he did so walk) with the tie on his shoulder and his back to the oncoming train. So much is clear. If, now, the point was decisive of the case, it would be well worth while to determine, under the testimony we have outlined, whether in a railroad yard with a well-marked and well-known safe path elsewhere, long used by pedestrians having business at the packing houses, there was substantial evidence of such known, customary and continuous user of the green track between Michigan and Ohio street as raised a duty to look for persons on that track. In this case the testimony of such user at best is conflicting, faint and unsatisfactory. But as the case breaks on another point,

we may, *arguendo,* allow to plaintiff as the most ad-
vantageous view possible to him that there was some
testimony on which the issue of fact, viz., whether the
green track from E to B was a place where defend-
ant's servants should have anticipated the presence
of persons, could go to the jury.

In that view of it, the remaining vital question
is this: Was there substantial evidence that plain-
tiff got on the green track at B and walked south on
that track in danger for, say, one hundred or one hun-
dred and seventy-five feet?

Such question seeks a closer view of the testimony.
As we see it, plaintiff, who knew better than any body
else where he walked, does not so testify. On the con-
trary, over and over again in answer to leading and
suggestive questions he refused to state it that way.
The just sum of his testimony was that he was in the
act of *crossing* the track and was struck in crossing
as he got to the center of it. The questions pro-
pounded to him by his learned counsel show beyond
cavil that they were dissatisfied with his answers and
were allowed by the court to go to a great length in
rectifying that damaging admission. But time after
time he reasserted that he just got on the track and
was crossing it—for instance, at one place the record
shows this:

"A. (Indicating) There he come right across,
right along here, saw car standing; somewheres along
here saw car standing; he just crossed these tracks
when he was struck.

"Q. After he had crossed the tracks there at
Michigan street, then which way did he go? A. He
says he walked across these tracks; until he didn't see
no train only that car, until it struck him there.

"Q. Where did he go after he got across the
tracks? A. He says he didn't go nowheres—no-
wheres—the train just struck him.

"Q. Where was he when the train struck him? A. When he crossed over here, the train hit him and he just fell over and that the last he remembers."

After so testifying, in response to a leading question, he said he was walking down the track. But speedily he returned to his first story and stuck to it to the end. Witness the following:

"Q. After the train struck him—how far he had got on the track before he was hit? A. He fell right there when the train struck him.

"Q. If he was struck when he first stepped on the track? A. He was right in the center; he fell to his left.

"Q. How long had he been on the track before he was struck? A. He don't know (how) long.

"Q. How long he had been—he knows, before he was struck; he knows how long after he walked on the path of the railroad track; how long he had been there before he was struck? A. He was not on the track at all; he just cross the track to look up the street and he got struck.

"Q. Just as he went on the track? A. Yes, sir."

Finally his counsel took him in hand again with the following result:

"Q. How far did he walk down the track before he was hurt? A. He didn't walk down the track at all.

"Q. Where was he when he was hurt? A. He don't remember a thing after he cross the track?

"Q. After he crossed to the track; after he crossed the track there that day with the tie on his shoulder? A. He says he didn't cross the track at all; it struck just as he got on the track.

"Q. Well, did he cross these tracks from the packing houses to go on the track?

"THE COURT: The track west of the one that he was walking on. A. Yes, sir.

"Mr. Allen:

"Q.   Where was he walking at the time he was hit; on the track or off the track or where?   A.   Just crossing the track when the train struck him.

"Q.   If he was walking across the track or by the track?   A.   He said crossing the track.

"Q.   At the time he was hurt, was he walking across the track or up and down the track?

"Mr. Woodson:   That is objected to as leading.

"A.   Just across the track."

When the foregoing testimony is supplemented by the fact that plaintiff testified that when he attempted to cross the track he looked for a train and saw none and heard no bell or warning, we have the whole case outlined by plaintiff himself.

To further sustain the issues on his behalf, plaintiff placed on the stand three putative eye-witnesses, each of whom saw something of the accident.   One of these was a boy who was playing with his companion, "monkeying around" as he expressed it, some distance west of the dead cars on the C. B. & Q track, and, as we make out, somewhere near in the line of Michigan street if it had been opened west across the tracks. This witness apparently undertook to testify that plaintiff walked on the track from B to where he was struck, yet the upshot of it all finally was that he admitted (as was the patent and physical fact) that he could not see plaintiff because of the string of dead cars between him and plaintiff on the C. B. & Q. track. He saw him just as his tie flew in the air and as he was about to appear in his line of vision at the south end of the dead freight cars.   Manifestly his testimony that he walked down the track was a mere conclusion of his own.   A careful examination of the record results in the foregoing view of it.   The companion of this boy was also a witness and his testimony rightly understood is to the same effect.   The train hitting

plaintiff had come from the depot up north.  One of these boys says it was running pretty fast and whistled about the time it hit him, that he heard it whistle after it left the station and that he "didn't pay any attention" to its whistling and heard no bell ring.  When asked whether plaintiff was walking on or off the track, he said he didn't see him, "but he must of been on it." The other boy said the train whistled "just a little this side of the crossing, Michigan street . . . towards the depot," and he heard no bell.  This witness estimated that the train whistled seventy-five yards from plaintiff.  The other witness was Cummings.  He was going east from the Hammond packing plant, following plaintiff at some distance behind, and also heading for the gap, X.  As he approached this gap he heard the whistle of the south-bound freight train on the green track, and, to beat the train over the crossing, broke into a run through the gap and across the green track.  He had heard the train whistle "this side of the station."  When it passed the point B, witness had reached the east side of the green track.  Further questioned about the whistle he said it whistled south of the depot and at that time witness was "pretty near across the track" and running to get ahead of it.  The train, he says, was then pretty close.  When witness noticed plaintiff on the track he was on the track one hundred and seventy-five feet south.

It will be observed that none of these witnesses testify they saw plaintiff walk *on* the track from B south to where he was struck.  While the testimony is a little obscure, yet it is not inconsistent with the testimony of plaintiff himself, to the effect that he had just got on the track at the time he was struck and was crossing it.

On such a record it must be held there was no case for the jury.  Because:

(a)  In the law of negligence a railroad track in and of itself is an unequivocal and large sign of

danger. It stands there mutely but unmistakably cry-
ing aloud, "Danger!" It is much the same as if one
stood there and with a trumpet called out, "Beware!"
"Look out for the cars!" "Listen for the cars!"
"Look out for yourself!" "Look well to what you
are about to do for you are taking your life in your
hands!" "Use your eyes!" "Use your ears!" "Use
your common sense!" Accordingly, as a general rule,
in the administration of justice in this kind of case, a
person in the act of crossing such track must before
entering on it look and listen. If he does not and is
injured in crossing he is guilty of negligence, he con-
tributes to his own injury and is hurt by his own
fault. In such case, the best the law can do is to leave
him where he puts himself; for no action lies. More-
over, given daylight and no obstructions, given a
situation where to look is to see, then such person is
conclusively held to see; for on that hypothesis looking
is equivalent to seeing. Hence, for one to say (as
plaintiff does) that he did not see an engine bearing
down upon him and so close to him as to strike him
as he crossed the track, is precisely the same as if he
had said he did not look at all. No judgment should
stand on an impossibility; for example, on the fact
that one saw around a corner with a naked eye, or
through a solid stone wall, or in broad day looked and
did not see a locomotive engine hard by on a straight
and unobstructed track.

Under the doctrine of many cases plaintiff's own
testimony put him in the fix of a man who negligently
moves from a place of safety beside the track to a
place of danger from a going locomotive on a track,
and immediately before it. In that view of it there
is no room to apply the last clear chance or humanity
rule. *Contra* plaintiff's negligence is the proximate
cause of his injury. [Green v. Railroad, 192 Mo. 131;
Schmidt v. Railroad, 191 Mo. 215; Mockowik v. Rail-
road, 196 Mo. l. c. 570 and cases cited; Eppstein v.

Railroad, 196 Mo. l. c. 733; Stotler v. Railroad, 204 Mo. 619; Laun v. Railroad, 216 Mo. 563.]

(b)   Nor, as pointed out in the statement of facts, did plaintiff's eye-witnesses testify to facts which carried the case to the jury, even if we ignored the testimony of plaintiff himself.  Conceding that one or more of them saw plaintiff on the track one hundred or more feet south of B, yet they testified to things making it impossible for them to have seen him walking on the track from B to the point of collision. They could not see through the line of dead freight cars. That he was on the track when struck or so close to it as to be in danger is self-evident from the sequel. The jury knew so much as that from the fact he was struck there.   But the question remains:  Did he walk there one hundred or more feet?  The laboring oar was held by plaintiff on that question in order to bring in play the humanity rule.  That track was rough, at best it was an uninviting place to travel for a man bearing a burden on his shoulder.  It was not the customary way of traveling.   To travel in a railroad yard for that distance, on a live track, without looking behind and with a burden on his back, was a highly imprudent and foolhardy thing; therefore, because of the natural instinct of love of life, there could no presumption arise that one would do such a thing.  If any presumption be indulged, it would be that he walked in safety outside the track until he undertook to cross it. Therefore, whether it was done or not done would depend on proof.  As we see it, there is no substantial proof to that effect.  It results that the judgment should be reversed.  It is so ordered.  All concur.