R. C. HANNA, Respondent, v. KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, April 6, 1914.

1. **NEGLIGENCE: Collision at Crossing: Contributory Negligence.** Plaintiff in a wagon with a companion drove in a slow walk along a street to a railway crossing. The view to the north was obstructed by store buildings, trees and the depot standing 18.3 feet of the track. A short distance north of the crossing there is a curve in the track. Plaintiff, before reaching the track stopped and listened for a train. He then proceeded toward the track and upon coming nearer to it looked through the space between the buildings to the track and saw no train. Seeing none and hearing none he continued on his way. A train approached from the north at a high rate of speed, estimated by the witnesses to be 40 miles per hour, in violation of an ordinance of the town. There was other disinterested evidence that the train made no noise as it approached. Plaintiff was seated at such a distance from the head of his horses that when he would get past the edge of the depot where he could see a short distance down the track to the curve the heads of the horses would be on the track. There was a space of six feet in which one could see down the track to the curve before the horses got directly on the track. Plaintiff's companion was looking north as they passed this six feet and saw no train. Plaintiff looked south as they passed over this six feet and then looked north and both occupants

at the same instant saw the train bearing down upon them. At that time the horses were on the track and the plaintiff endeavored to get hurriedly out of the way and almost succeeded in doing so, but the train struck the rear end of the wagon and threw the men out injuring plaintiff. *Held* that plaintiff could not be said to have been guilty of negligence as matter of law. Comparisons of the speed of the wagon with that of the great speed of the train reasonably support an inference that at the time the parties were looking to the north, and in the six foot zone of safety after passing the depot, the train had not come in sight around the curve, and hence plaintiff did not knowingly pass from a place of safety into one of danger, and could not be said, as matter of law, to have failed to exercise the ordinary care that an ordinarily prudent man would have exercised under like circumstances.

2. ———: ———: **Acting in an Emergency.** The fact that when the team was on the track, the plaintiff did not stop and back the team off but attempted to hurry on out of the way will not convict him of contributory negligence as matter of law. The question is not what could have been done as determined afterward by a cool and collected person upon a calm review of all the facts, but whether what plaintiff did was the act of a prudent man at that time and under the peril of the situation in which he was then placed.

Appeal from Jackson Circuit Court.—*Hon. Thos. J. Seehorn*, Judge.

AFFIRMED.

*Cyrus Crane, Geo. J. Mesereau* and *O. L. Cravens* for appellant.

*Boyle & Howell* and *Joseph S. Brooks* for respondent.

TRIMBLE, J.—Plaintiff and a companion, sitting in the spring seat of an ordinary farm wagon, drove over defendant's railway crossing on Beaver street in the town of Anderson, Missouri. A south bound freight train, travelling at the rate of forty miles an hour, struck the rear end of the wagon throwing the men out and injuring plaintiff.

An ordinance of the town limited the speed of trains to ten miles an hour, and the case was submitted to the jury on the question of negligence in the rate of speed at which the train was running. The answer was a general denial and a plea of contributory negligence. The jury returned a verdict of $1500 in favor of plaintiff. It is charged that plaintiff was negligent, first, in failing to use due care to timely ascertain the approach of the train, and second, in attempting to beat the train over the crossing after its approach was discovered. And we are urged to reverse the case upon the ground that, as matter of law, plaintiff was guilty of contributory negligence.

To justify us in doing so, that negligence must appear so clearly that reasonable minds can draw no other inference or conclusion than that the plaintiff was lacking in the care demanded of him under the circumstances. So long as there is room for reasonable minds to draw different conclusions from the facts, the determination of the question of contributory negligence must be left to the jury even though the question be close and the compass within which the alleged negligence lies be narrow.

Before proceeding to investigate this question, it will be well to dispose of another contention over a fact necessarily involved in the question of contributory negligence. That contention is that there was no evidence to show that the train was travelling at an unlawful rate of speed or at forty miles per hour. We think there was. One witness says that his attention was attracted to the train because it was running so fast. Another says "it was just hitting the high rails." These two and a third say it was running from thirty-five to forty miles an hour but their testimony as to the rate was stricken out by the court on the ground that the witnesses had not qualified themselves to testify to the rate. Their evidence shows, however, that the train was travelling through the town

at a very high rate of speed. Plaintiff had been a railroad agent for four years and also a railway postal clerk and in that way had had experience in observing and judging the speed of trains. He testified that the train was traveling forty miles an hour. His testimony was objected to but the objection was overruled. Now it is true plaintiff testified that he could not tell the speed of the train at the instant he saw the train bearing down upon him. If he had said that, it would be unbelievable: Because in that thrilling and awful instant he had no time to watch and judge of its approach, as his mind was occupied with the all-absorbing business of getting out of its way. But from the moment he first saw it until it struck the rear end of his wagon coupled with the distance it travelled in that infinitesimal fragment of time and the speed with which its long train of cars passed him after the collision, he did have sufficient data to reach a conclusion as to its rate of speed. And this is, in effect, what he testified to. The objection, therefore, went to the weight of his testimony rather than its admissibility. We cannot say it was without probative value. It is corroborated by the distance travelled by the train in the short space of time occupied by the wagon in travelling a portion only of the length of the wagon and team across the track. The only other persons who could have testified positively and definitely as to the speed of the train were the engineer and fireman on the engine, and they were not put upon the stand. We must therefore consider the question of plaintiff's contributory negligence in the light of the established and uncontroverted fact that the train was travelling at the rate of forty miles an hour.

Was plaintiff clearly and indubitably guilty of contributory negligence in not discovering the approach of the train before the track was reached? Undoubtedly he was not so far as his duty to discover the train *by hearing* is concerned. Hamners, who was sitting

on the porch of his hotel, and whose habit and custom
it was to watch and observe the passing of trains,
who saw plaintiff's wagon as it went down the street
toward the crossing, and who, so far as the evidence
shows, was not absorbed so that he would not be likely
to hear the train, says he did not hear it until the
danger whistle was blown, and then plaintiff was on
the track and the train from seventy-five to one hun-
dred feet away. He did not hear a bell nor a whistle
nor the approach of the train, until the danger whistle
aforesaid. Love, the liveryman whose business it was
to meet passenger trains and local freights and who
had been to the depot and had returned, or was re-
turning, from thence and was seventy-five yards from
the railroad when the train crossed Main street 212
feet from the crossing in question, says he did not hear
the whistle until after the engine had passed Main
street. So that what he heard was the danger whistle
that Hamners testified to. Stilwell, a lumberman whose
business was across the tracks from the depot, was
standing thirty or forty feet from the accident and he
never heard the train approach until it gave the danger
whistle. Gaston, who was in the wagon with plaintiff,
testified they listened for a train but heard none, until
they saw the train upon them when it gave the danger
whistle. Plaintiff testified that as they drove along
the street and were approaching the crossing, they
stopped the team a moment and not seeing or hearing
a train went on; that they listened for a train but
heard nothing until they got on the track. So that
plaintiff was not negligent in failing to listen for or
hear the train as it approached.

Was he negligent as matter of law in failing to see
it before he got on the track? This calls for a state-
ment of the surroundings at the crossing.

Plaintiff was driving east. The train was com-
ing from the north. On the north side of the track the
view of the track to the north was obstructed by a store

building, a restaurant and the depot. In addition to these the trees and foliage thereon helped to obstruct the view, though it is not clear just where the trees were located. However, mention is made of them by certain of the witnesses. North of the crossing the track makes a curve, and between the depot and the restaurant is a vacant space fourteen feet in width through which a view can be had of a segment of the track. The depot sits close to the north side of the street, and on the west side of the track.

As plaintiff drove toward the crossing, and when about fifty or sixty feet distant therefrom, he stopped and something was said between the two men in the wagon about looking out for a train. At that point they could not see to the north for the building, but they heard no train and the wagon proceeded. Hamners sitting on his porch says he saw the wagon stop and he heard no train. Gaston was sitting with plaintiff and was north of him. The team was going in a slow walk from three to three-and-one-half miles per hour. As they passed the opening between the restaurant and the depot plaintiff looked through there to the north and saw no train, he looked to the south and saw none and not hearing or seeing any, the team proceeded on its way past the depot. Plaintiff's testimony, as well as that of other witnesses in his behalf, is that the curve in the track and the depot so shuts off the view of a train approaching from the north that when one is driving in a wagon the horses will be on the track before the driver is far enough past the depot to see north along the track more than two hundred or two hundred and forty feet.

Defendant's view of the evidence is that the two men in the wagon had an agreement that Gaston would look to the north and plaintiff would look to the south, and that plaintiff trusted to Gaston doing that duty and never looked north for himself. There was a general understanding to this effect, and yet the evidence shows

that plaintiff also looked north as he passed the open space between the restaurant and the depot, and also after he passed the depot. He saw the train when it was 150 or 200 feet away.

A surveyor, placed on the stand by defendant, testified that when the edge of the depot next to the track was reached, one could see 283 feet down the track and this distance would increase as one approached the track; that from the east edge of the restaurant one could see down the track 441 feet and from the west edge of the depot one could see 453 feet. It was in evidence that from the head of the horses back to the driver's seat was twelve feet, and that from the east edge of the depot to the track was eighteen and three tenths feet. The argument, therefore, is that there was a space of six feet after the driver passed the depot in which, had he looked, he would have seen the train in time to have stopped his team and avoided the collision.

If plaintiff was guilty of contributory negligence as matter of law, it was either in failing to see the train as he looked north through the opening between the restaurant and the depot or in not looking north the instant his vision reached past the depot, or, if he did so look, in not seeing the train at that instant.

It must be borne in mind that this case is not one where to look is to see and to listen is to hear. If the train was at the place where it could have been seen when the men looked between the restaurant and the depot, then for them to look was to see, and if they looked they must be held to have seen. And if the train was in sight as the men emerged from behind the depot and passed over the six feet of safety, then for them to look in that instant was to see, and if they did not look, or looking did not see, the charge of negligence might well lie. For although six feet is an exceedingly narrow margin upon which to require men to act in order to absolve themselves of the charge of neg-

ligence in a matter of life and death and although they were travelling that six feet at the rate of three or three-and-one-half miles per hour, yet they were driving into what might be termed a trap and must, under those circumstances, use every precaution that an ordinarily prudent man would use, acting prudently, even to using the opportunity afforded by that small space of six feet. So that if it clearly appears that the men were negligent in not seeing the train between the restaurant and the depot or were negligent in not seeing the train in the six feet of space beyond the depot, we are authorized to disturb the verdict. But not unless it does so clearly appear.

Now, careful calculations based on the relative speeds of the train and wagon show that when the men looked north between the restaurant and depot the train was not in sight from that point. Indeed it was not then in sight from the crossing at that time. Therefore the men were not negligent in failing to see it then.

Was plaintiff negligent in not seeing it as he passed over the six feet beyond the depot? Defendant says he did not look. Here is the testimony:

Q. Now, how far away was the train when you saw it? A. It was about a hundred and fifty feet I should judge—maybe two hundred.

Q. Had you looked up the track before that, towards the train? A. Yes, sir.

Q. Did you see the train then? A. No, I didn't.

Q. You didn't see any train? A. No, sir.

Q. Did you listen for any train? A. Yes, sir, we did.

Q. Could you hear any coming? A. No, sir.

Q. Did you hear anything that sounded like a whistle or ringing the bell about that time? A. Not until we got right on the track—then, I seen the train coming. That was the first I knew there was a train there coming.''

On cross-examination he appears to say that he did not look north again after passing the space between the restaurant and depot, but it is clear he was talking about what they were doing as they were passing the building, for he testified:

Q. And from that time on, you didn't look any more to the north—nor to the south? A. Until we got to where we could see something on the track. You see, the station sets right up there; and, *as soon as I could look into the track, I did*—and, happened to see this train. I couldn't hear it; and the horses were on the track before I could see the train."

In addition to this, Gaston, plaintiff's companion in the wagon, testified that as they drove past the depot he kept looking for a train, but saw none and heard none until "we were right up on the track" when the train gave two short whistles and they had not time to escape before they were struck. Now, of course, plaintiff could not delegate to Gaston the duty of looking north of him. Plaintiff was the driver and in charge of the wagon. But the fact that Gaston looked and saw no train and heard none, while they were in the six feet zone of safety, corroborates plaintiff that at that instant no train was in sight, and it also tends to show that he is correct when he says he looked and saw none. It also tends to show that no train was there as they passed the six foot zone but that it flashed into view as they entered the zone of danger. It tends also to show that the train's excessive speed enabled it to round the curve, burst into view after the team was on the track and then pounce upon them before the wagon cleared the rails. When there is room for this view of the testimony can we say plaintiff was negligent as matter of law? We think not. The excessive speed of the train, the approach of which was without warning, could, under these circumstances, catch

even the most wary. These men stopped before they came to the track and listened. They had the question of a train in mind. They looked and listened and neither saw nor heard one, until after they were on the track, and even then would have escaped had the train been running at a less rate of speed. The statement of the men that as they emerged from behind the depot they looked and saw *no* train, that they looked again and there *was* a train, is not barren of probative value when we consider the limited distance in which a train could be seen and the high rate of speed at which it was traveling. It thus was possible for a man to look and there be no train to see; to look again, and for the train to be in sight and in striking distance before he could get his wagon off the track. These circumstances render this case different from the case of Dyrez v. Railroad, 238 Mo. 33. That was a case of a pedestrian who in broad daylight on a straight and unobstructed track stepped in front of an engine, under circumstances where if he looked he would have seen and, as said by Judge Lamm on p. 47, "given a situation where to look is to see, then such person is conclusively held to see."

Neither is it like the case of Burge v. Railway, 244 Mo. 76, for in that case the train could have been seen by the traveler approaching the crossing for 900 or 1000 feet before it reached the point of collision. And the traveler in that case attempted to cross without either looking or listening when to have done either would have meant safety. In the case of Laun v. St. Louis, etc., Ry., 216 Mo. 562, the person crossing the track could have seen the train for a quarter of a mile away and coming upon a straight and unobstructed track. In the case of Stotler v. Railroad, 204 Mo. 619, the traveler drove toward the crossing in a trot with an unobstructed view down a straight track for more than a mile, and went upon the track without decreas-

ing her speed or looking up the track in either direction and was struck just as her buggy got on the track.

It is unnecessary to analyze cases further. They all hold that a railway crossing is a place of danger; that one approaching it must use his senses and be on the lookout; and that although he says he was looking, yet if the facts are such that had he looked he could have seen or had he listened he could have heard, he will be conclusively held to have seen or heard; and in such cases, if he says he looked and listened but did not see nor hear, his statement will not carry any probative force. Under the facts of this case, however, there is no evidence to controvert the testimony that the train approachd without noise or warning, and none to show that plaintiff did not look and listen. And good reason is shown for the men not seeing the train when they did look the last time before entering upon the zone of danger.

There is less ground for holding plaintiff guilty of negligence as matter of law on the second ground above stated than on the first. Of course, if plaintiff was in a place of safety when he saw the train and attempted to beat the train across, he should be denied recovery. But the team was on the track. There is no evidence to show which would have taken longer, to have stopped the team and backed them off the track or to have passed them hurriedly over as plaintiff did. The plaintiff had about three seconds in which to act. As said by Judge Graves in Burge v. Railroad, 244 Mo. 76, l. c. 102, "Human beings can't work with the rapidity of electricity. Thoughts must be gathered, and nimble fingers and hands put in motion. Seconds fleet by. They are unlike minutes."

The question is not what could have been done as determined afterward by a cool and collected person upon a calm review of all the facts and circumstances, but whether what plaintiff did was the act of a prudent man at that time and under the peril of the sit-

uation in which he was then placed. He had no time to deliberate. He had to act instantly. The team was going forward. We cannot say as matter of law he was negligent because he did not attempt to stop and back off, instead of hurrying across. He could not be charged with negligence as matter of law if he attempted to escape either way. Having no time to deliberate, the failure to exercise the best judgment possible to be reached in the light of after facts cannot be considered contributory negligence. [Slaughter v. Met. St. Ry. Co., 116 Mo. 269; Kleiber v. Peoples Ry. Co., 107 Mo. 240; Bischoff v. Peoples Ry. Co., 121 Mo. 216.]

There was no error in refusing instructions number four and five. They were fully covered by other instructions given in defendant's behalf.

The judgment is affirmed. All concur.